[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12306

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RODRIGO MALDONADO-ARCE,

Defendant- Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 5:23-cr-00298-LCB-HNJ-1

_____

Before ABUDU, KIDD, and MARCUS, Circuit Judges.

PER CURIAM:

Rodrigo Maldonado-Arce appeals his sentence of 180 months' imprisonment for possession with intent to distribute methamphetamine and cocaine and possession of a firearm by an illegal alien, representing an upward variance from the advisory Sentencing Guidelines range of 120 to 135 months. On appeal, he argues that: (1) his sentence is procedurally unreasonable because the district court relied on clearly erroneous facts when selecting his sentence; and (2) his upward-variance sentence was substantively unreasonable. After careful review, we vacate and remand.

## I.

To preserve an issue for appeal, a defendant must first present it to the district court, "raising that point in such clear and simple language that the trial court may not misunderstand it." *United States v. Corbett*, 921 F.3d 1032, 1043 (11th Cir. 2019) (citation modified). If the defendant did not sufficiently raise a sentencing issue in district court and instead raises it for the first time on appeal, we review for plain error. *United States v. Aguillard*, 217 F.3d 1319, 1320 (11th Cir. 2000). To establish plain error, the defendant must show: (1) an error, (2) that is plain, and (3) that affected his substantial rights. *United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007). If the defendant satisfies these conditions, we may exercise our discretion to recognize the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id*.

An error is plain if it is clearly contrary to settled law at the time of sentencing or at the time of appellate consideration. *United States v. Shelton*, 400 F.3d 1325, 1331 (11th Cir. 2005). As for the third prong, the defendant "[n]ormally . . . must make a specific showing of prejudice to satisfy the 'affecting substantial rights' prong." *United States v. Olano*, 507 U.S. 725, 735 (1993). In making this showing, the defendant "almost always [must show] that the error . . . affected the outcome of the district court proceedings. The standard for showing that is the familiar reasonable probability of a different result formulation." *United States v. Margarita Garcia*, 906 F.3d 1255, 1267 (11th Cir. 2018) (citation modified). In the sentencing context, the defendant has the burden to show "that his sentence would have been different but for the court's [error]." *United States v. Vandergrift*, 754 F.3d 1303, 1312 (11th Cir. 2014).

"A plain error affecting substantial rights does not, without more, satisfy the plain-error test, for otherwise the fourth prong and the discretion afforded by the fourth prong would be illusory." *Shelton*, 400 F.3d at 1333. However, the Supreme Court has said, in the context of a guidelines error, that "[t]he risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 585 U.S. 129, 140 (2018). We apply this factor on a case-specific and fact-intensive basis. *Puckett v. United States*, 556 U.S. 129, 142 (2009).

It is well established that a defendant has a due process right not to be sentenced based on false or unreliable information.

*United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010). This means that a district court commits procedural error if it, among other things, selects a sentence based on clearly erroneous facts. *Gall v. United States*, 552 U.S. 38, 51 (2007). "A fact finding is clearly erroneous when, after reviewing all the evidence, the court is left with the definite and firm conviction that a mistake has been committed." *United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013) (citation modified). "A sentencing court's findings of fact may be based on undisputed statements in the" presentence investigation report ("PSI"). *United States v. Bennett*, 472 F.3d 825, 832 (11th Cir. 2006). A court may rely on conclusory statements in the PSI that have not been objected to, even without supporting evidence. *United States v. Hedges*, 175 F.3d 1312, 1315 (11th Cir. 1999).

On appeal, Maldonado-Arce argues that his sentence is procedurally unreasonable because the district court relied on a clearly erroneous factual finding in sentencing him -- that is, that he had been deported as an illegal alien and had committed the instant offenses upon illegally re-entering the country. In district court, however, Maldonado-Arce did not object "in such clear and simple language that the trial court may not misunderstand it" when the court, in pronouncing sentence, found that he previously had been deported and re-entered the country. *See Corbett*, 921 F.3d at 1043.[1] We review this claim for plain error. *See Aguillard*, 217 F.3d at 1320.

---

[1] Maldonado-Arce's general objection to the upward variance after his sentence was pronounced is not enough to preserve a challenge to the specific procedural error that he now claims for the first time on appeal. *See id.*

As for the first prong of the plain error test, we agree with Maldonado-Arce that the district court erred by basing his sentence on a clearly erroneous factual finding concerning his criminal history.  The problem appears to have begun with the PSI, which described Maldonado-Arce's history like this:  it stated that he was brought to the United States as a child; that he was arrested for the instant drug and firearm offenses in January 2022; that he was arrested on the charge of being an "alien present without admission or parole" in February 2022; that the "[d]isposition" of the immigration charge was "[d]eported" in May 2022; and that Maldonado-Arce had "been in custody for the duration of th[e] [instant drug and firearm] case."  Specifically, the detail from the PSI that Maldonado-Arce had been adjudicated "[d]eported" in May 2022 seems to have led to a misunderstanding at his sentencing hearing.

At sentencing, the district court discussed Maldonado-Arce's guidelines range -- 120 to 135 months' imprisonment -- and the defendant asked for and the government recommended a 120-month sentence, at the bottom of the range.  But the district court disagreed, imposing a sentence of 180 months, which it expressly called an upward variance.  At this point, it became clear that the court believed that Maldonado-Arce had been deported *before* he committed the instant offenses, resting its decision on:

> [T]he sentencing factors the nature and circumstances of this offense [--] *the defendant has already been deported once, he has come back here illegally now, he is in possession of firearms, and continuing to sell crystal meth to the public*. Also to afford adequate deterrence to

> criminal conduct and to protect the public from the
> further crimes of the defendant.

(Emphasis added).

On the record before us, the district court's comment that Maldonado-Arce had "already been deported once" and had "come back" to commit the instant drug and firearm offenses was a factually incorrect understanding of the relevant timeline provided in the PSI. Regardless of whether the PSI correctly reported that Maldonado-Arce was deported in May 2022, the PSI clearly reflects that he committed the January 2022 drug and firearm offenses *before* he was arrested for his immigration offense in February 2022 and *before* his purported deportation in May 2022. There is no dispute as to this chronology of events.[2]

Thus, even if we accept as true -- as the district court was justified in doing, based on the unobjected-to statement in the PSI, *see Hedges*, 175 F.3d at 1315; *Chavez*, 584 F.3d at 1367 -- that Maldonado-Arce had been adjudicated deported in May 2022, it still is

---

[2] We recognize that the PSI's notation that Maldonado-Arce was adjudicated deported in May 2022 contradicts other statements in the PSI, including that he had been in state, ICE, or federal custody continuously for the duration of the instant case, since January 2022. Likewise, at sentencing, Maldonado-Arce's counsel asked for credit for the 30 months he'd already served, noting that he'd been incarcerated since January 2022. But we need not resolve whether he was actually deported in May 2022; the relevant finding the district court relied on in imposing the upward variance was that he was deported and returned before committing the instant drug and firearm offenses. Nothing in the record supports this finding.

impossible for Maldonado-Arce to have committed the instant January 2022 offenses after his stated deportation in May 2022.  As a result, we are compelled to conclude that the district court's finding -- that Maldonado-Arce was deported and returned to commit the instant offenses -- amounted to clear error.  *See Philidor*, 717 F.3d at 885; *cf. United States v. Pineiro*, 389 F.3d 1359, 1366 (11th Cir. 2004), *amended*, No. 03-14723 (11th Cir. Nov. 15, 2004) (We will not reverse "the trial court's factual finding[] . . . unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it.") (citation modified).

Indeed, other than relying on the defendant's failure to object to the PSI's notation of his purported May 2022 deportation, the government points to nothing in the record that would support the court's inherently contradictory finding about the chronology of events.  Nor does the government claim that the district court did not rely on this finding in reaching its decision.  Accordingly, the district court procedurally erred when it relied on clearly erroneous facts in sentencing Maldonado-Arce.  *See Gall*, 552 U.S. at 51.

Moreover, the district court's error in this case was plain.  To reiterate, the Supreme Court has instructed us, when reviewing sentencing decisions, "[r]egardless of whether the sentence imposed is inside or outside the Guidelines range," to "ensure that the district court committed no significant procedural error, such as . . . selecting a sentence based on clearly erroneous facts."  *Id*.; *see also United States v. Barner*, 572 F.3d 1239, 1251 (11th Cir. 2009) (remanding where a prosecutor's possibly misleading statements may have

caused the district court to impose a sentence based on clearly erroneous facts about whether the defendant had completely cooperated).  This admonition -- that sentencing someone based on false information violates his due process rights -- has been long settled, well before Maldonado-Arce was sentenced. *See Gall*, 552 U.S. at 51; *Ghertler*, 605 F.3d at 1269; *Shelton*, 400 F.3d at 1331.  Maldonado-Arce therefore has shown that there was error that was plain, satisfying the second prong of the plain-error test.

As for the third prong of the test, we conclude that the error seriously affected Maldonado-Arce's substantial rights.  In analyzing this prong, we look to whether the district court's reliance on clearly erroneous facts affected the outcome of the district court proceedings. *See Olano*, 507 U.S. at 734–35.  In other words, Maldonado-Arce "has the difficult burden of showing there is a 'reasonable probability' that he would have received a lighter sentence but for the error." *United States v. Jones*, 743 F.3d 826, 830 (11th Cir. 2014).  That burden requires him "to show that the error actually did make a difference: if it is equally plausible that the error worked in favor of the defense, the defendant loses; if the effect of the error is uncertain so that we do not know which, if either, side it helped the defendant loses." *Id*. (citation modified).

Maldonado-Arce has met this difficult burden.  As the record reflects, in justifying its choice of sentence and the upward variance, the district court commented that Maldonado-Arce had been deported, had come back illegally, and then had committed the instant offense conduct -- a timeline that is factually inaccurate.

Surrounding this misstatement, the district court mentioned several sentencing factors, including the nature and circumstances of the offense, the need to afford adequate deterrence to criminal conduct, and the need to protect the public from the further crimes of the defendant. In so doing, the district court implied that Maldonado-Arce had shown a pattern of disrespect for the law by illegally reentering the country following removal and then committing his current drug and firearm crimes, making its misunderstanding of the timeline of events quite relevant to its decision.

We think it is reasonably probable that the district court would not have given the same upward-variance sentence if it had correctly understood that the current offense conduct was committed five months *before* Maldonado-Arce purportedly was "deported." *Id*. That is to say, we are confident -- when the reason the district court gave for its upward-variance sentence, especially where the government asked for one at the bottom of the range, was a significant misstatement about the defendant's criminal and immigration history -- "that the error actually did make a difference" in Maldonado-Arce's sentence. *Id*. (citation modified). He has satisfied the substantial rights prong of the plain-error test.

Finally, we must decide whether the error seriously affects the fairness, integrity, or public reputation of judicial proceedings and whether to exercise our discretion to correct the error. *Turner*, 474 F.3d at 1276. In the context of a "plain Guidelines error," the Supreme Court has advised that "[t]he risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or

public reputation of judicial proceedings . . . because of the role the district court plays in calculating the range and the relative ease of correcting the error." *Rosales-Mireles*, 585 U.S. at 140. It added that sentencing proceedings should "actually reflect the nature of the offense and criminal history of the defendant, because the United States Sentencing Commission relies on data developed during sentencing proceedings, including information in the presentence investigation report, to determine whether revisions to the Guidelines are necessary." *Id*.

With this in mind, the Supreme Court twice has found the fourth prong of plain error satisfied where the district court's error in imposing a sentence was "based on a [criminal history calculation] mistake made in the PSI by the Probation Office, which works on behalf of the district court," *id*.; *Molina-Martinez v. United States*, 578 U.S. 189, 196 (2016). Likewise, we've found the test satisfied where the district court -- under the pre-*Booker*[3] mandatory guidelines regime -- had imposed a guidelines sentence despite expressing a desire to impose a sentence below the low end of the range, and *Booker* had since made the guidelines discretionary, *Shelton*, 400 F.3d at 1333–34; where the district court imposed a sentencing enhancement that did not exist when the defendant committed the offense, in violation of the Ex Post Facto Clause, *United States v. Maurya*, 25 F.4th 829, 836–37 (11th Cir. 2022); where the district court improperly imposed a term of supervised release in violation of the statutory maximum term, *United States v. Moore*, 22 F.4th

---

[3] *United States v. Booker*, 543 U.S. 220 (2005).

1258, 1264 (11th Cir. 2022); and where the district court "obviously erred in applying [an] enhancement" and sentenced the defendant under an incorrect guidelines range, even though the original sentence fell within the new, correct range, *United States v. Bankston*, 945 F.3d 1316, 1319–20 (11th Cir. 2019).

We reach the same result here. As we've explained, Maldonado-Arce's substantial rights were affected by the district court's plain error, in violation of his rights to due process. Much like in the case of a guidelines error, we have no problem concluding that this error prevented the district court from imposing a sentence that "actually reflect[ed] the nature of the offense and criminal history of the defendant," *Rosales-Mireles*, 585 U.S. at 140, and led to a "deprivation of liberty [that] particularly undermines the fairness, integrity, or public reputation of judicial proceedings," *id*. Accordingly, we exercise our discretion under the plain error test and vacate and remand for resentencing.[4]

**VACATED AND REMANDED.**

---

[4] Because Maldonado-Arce's sentence is procedurally unreasonable, we do not reach whether it also is substantively reasonable. *See Barner*, 572 F.3d at 1253 (remanding for resentencing based on a procedural error and declining to address the substantive reasonableness of the sentence until after resentencing).